**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2890
_____

BRYAN M. SANTINI,

Appellant

v.

COLONEL JOSEPH R. FUENTES;
TROOPER J. L. FURHMANN;
TROOPER R. H. SICKLES;
STATE OF NEW JERSEY;
JOHN DOE 1-10 (a fictitious name);
JOHN ROE SUPERVISING OFFICER (a fictitious name)
ABC CORP. 1-10 (a fictitious name)


_____


On Appeal from the United States District Court
for the District of New Jersey
(No. 3-11-cv-00639)
District Judge:  Honorable Brian R. Martinotti

Submitted: June 11, 2018

Before:  CHAGARES, GREENBERG, and FUENTES, Circuit Judges.

(Filed July 12, 2018)
_____

OPINION*
_____

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

CHAGARES, Circuit Judge.

Plaintiff Bryan Santini appeals the District Court grant of summary judgment in favor of the defendant. He argues that the District Court erred by: (1) granting qualified immunity on his claims for excessive force and (2) applying the doctrine established in Heck v. Humphrey, 512 U.S. 477 (1994). For the reasons that follow, we will affirm.

I.

As this opinion is non-precedential and we write for the parties, our factual recitation is abbreviated. On February 3, 2009, a fight broke out between two individuals at a dairy farm in Harmony Township, New Jersey. Santini, who worked at the farm milking cows, witnessed the fight along with about ten other individuals. One of those witnesses called the police to report the altercation. Officers from Greenwich Township, Lopatcong Township, and the New Jersey State Police — about twenty in total — responded. While Santini was conversing with one officer, Trooper J.L. Fuhrmann from the State Police called him over. Santini, whose hands were in his pockets, began describing the incident to Fuhrmann. Fuhrmann yelled at Santini to remove his hands from his pockets, who complied and explained that his hands were cold from milking all day. Fuhrmann ordered him to keep his hands visible. Santini continued to describe the fight he had witnessed, but then he put his hands back into his pockets. Fuhrmann again told Santini to keep his hands visible. Santini maintains that he complied and apologized, noting that he had only his phone and wallet in his pockets. He then continued to speak, but pulled his hands into his sweatshirt sleeves. Fuhrmann then yelled at him to keep his

2

hands visible. In response, Santini said that he was going to return to work and turned away.

Fuhrmann then said "[c]ome here" and grabbed Santini's wrist.[1] Plaintiff's Brief 5. The men fell to the ground, and Santini struggled to stand up. As Santini tried to return to his feet, an officer jumped on top of him and told him to put his hands behind his back and that he was under arrest. At this point, other officers were on top of Santini, punching him and striking him with nightsticks. Officers instructed him to stop resisting, and then officers deployed two bottles of pepper spray against Santini, which he claims lasted for thirty seconds to a minute. Once Santini was in handcuffs, the officers stopped their use of force against him.

Santini later filed this action, alleging that the officers violated his rights under the United States Constitution, the New Jersey Constitution, and New Jersey state law. Relevant to this appeal are his claims for excessive force. The District Court granted summary judgment in favor of the officers and the State of New Jersey, concluding inter alia that the officers were entitled to qualified immunity. Thereafter, Santini moved for reconsideration on his excessive force claims. The District Court denied that motion, and Santini appealed to this Court.

---

[1] In this appeal, Santini argues that "Trooper Fuhrmann grabbed Santini's wrist . . . and then jumped on Santini's back without provocation of any sort." Santini Br. 21. The record does not support this assertion. Santini cites the affidavit of a witness, who stated that after Fuhrmann grabbed Santini, Santini "tr[ied] to release the Trooper's grip on his shoulder without being pushy about it." J.A. 90. Santini himself testified that when Fuhrmann "pulled my arm back . . . I pulled it forward." J.A. 50. Thus, even construing the facts in a light most favorable to Santini, we cannot conclude that an officer tackled him without provocation.

In a precedential opinion, this Court concluded that summary judgment on the excessive force claims was inappropriate because:

> [W]hile the District Court stated the appropriate test to determine qualified immunity, it failed to properly construe all facts and inferences in Santini's favor. . . . [W]hen all facts and inferences are taken in Santini's favor, a reasonable factfinder could find that Santini's constitutional rights were violated. Therefore, the District Court's grant of summary judgment on that issue was inappropriate.

Santini v. Fuentes, 795 F.3d 410, 418–19 (3d Cir. 2015). As a result, we vacated the order of summary judgment and remanded for further proceedings. Id. at 419. On remand, the District Court again granted summary judgment on grounds of qualified immunity, because it found that the Constitutional right at issue was not clearly established at the time of the putative violation, and — alternatively — because the claim was barred by Heck. J.A. 12, 15.[2] Santini timely appealed.

## II.

The District Court had jurisdiction over this case pursuant to 28 U.S.C. § 1331, 28 U.S.C. §1343(a)(3), and 29 U.S.C. § 1367. We exercise jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review of the District Court's order granting summary judgment. SimmsParris v. Countrywide Fin. Corp., 652 F.3d 355, 357 (3d Cir. 2011).

---

[2] The District Court declined to exercise supplemental jurisdiction over the remaining state law claims. J.A. 16–17.

4

We turn first to the question of qualified immunity. As we noted in this case's first appearance before us, "[t]he doctrine of qualified immunity shields government officials who perform discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Santini, 795 F.3d at 417 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). We perform a two-step inquiry to determine a government official's entitlement to summary judgment on grounds of qualified immunity: (1) "whether the facts — taken in the light most favorable to the nonmoving party — show that a government official violated a constitutional right;" and (2) "whether that right was clearly established at the time of the official's actions." Id. (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)). In our prior Santini opinion, we concluded that "material factual disputes exist as to whether Santini's constitutional rights were violated" and therefore found summary judgment inappropriate on the basis of the first prong of the Saucier inquiry — whether there was a violation of a constitutional right. Id. at 420.

The District Court, correctly interpreting our opinion, considered the second prong of the analysis, wherein courts "inquire whether — even though an officer violated an individual's constitutional right — immunity should still protect that officer from liability." Id. at 417 (quoting Curley v. Klem, 499 F.3d 199, 207 (3d Cir. 2007)). As noted above, at issue is whether the right was clearly established at the time of the violation. To make this determination, we ask "'whether it would be clear to a

5

reasonable officer that his conduct was unlawful in the situation he confronted.'" Id. (quoting Saucier, 533 U.S. at 202). Thus, a right is clearly established "when its 'contours . . . [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Barna v. Bd. of Sch. Dirs. of the Panther Valley Sch. Dist., 877 F.3d 136, 142 (3d Cir. 2017) (quoting Wilson v. Layne, 526 U.S. 603, 615 (1999)). This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Saucier, 533 U.S. at 201; see also Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (noting that "the dispositive question is whether the violative nature of particular conduct is clearly established"). A plaintiff seeking to evade summary judgment on grounds of qualified immunity therefore "do[es] not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011).

Here, viewing the facts in the light most favorable to Santini, the District Court considered:

> whether Plaintiff had a right to be free from the use of force, including the use of pepper spray and strikes from nightsticks, as a non-suspect witness who walked away from an investigatory discussion, and who admitted he (1) unintentionally did not comply with an officer's request to keep his hands visible, and (2) resisted arrest.

J.A. 12. We agree with the District Court that this formulation of the question adequately contextualizes the alleged conduct as Saucier instructs, with consideration of specifics rather than "broad general proposition[s]." 533 U.S. at 201. This question captures the particular conduct alleged and allows us meaningfully to consider whether the right at issue was clearly established at the time of the alleged violation.

6

We conclude that the right, if it exists, was not clearly established. First, there are no cases directly on point that suggest that this conduct is unlawful. Santini cites several excessive force cases, but none establish a rule for these facts or state a constitutional right that is obviously applicable to this case. Second, the amount of force used was not so significant that the objectively reasonable officer would know it to be unlawful. This is evidenced by the facts that all force stopped as soon as Santini was in handcuffs and that he suffered no significant or lasting injuries. Finally, the objectively reasonable officer would not know the use of force on these facts to be unlawful. Even in the light most favorable to Santini, the facts suggest some level of resistance to Fuhrmann at all stages of the physical interaction and continued resistance, even as officers instructed him to stop resisting. Also relevant is the repeated non-compliance with the instruction to keep hands visible. Even if the right to be free from police use of force in those circumstances exists, the objectionably reasonable officer might not know that. Because qualified immunity protects officers from reasonable error, we conclude that the grant of summary judgment is appropriate.

Having concluded that summary judgment is appropriate on grounds of qualified immunity, we need not — and do not — reach the issue of the <u>Heck</u> bar.

## IV.

For the reasons stated above, we will affirm.

7